**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PRUCO LIFE INSURANCE COMPANY,** | * | **CIVIL ACTION NO. 07-9615** |
| **Plaintiff** | * | |
| **versus** | * | **SECTION: "C"** |
| | * | |
| **THE SCRUGGS FAMILY TRUST, A** | * | **MAGISTRATE "5"** |
| **REVOCABLE INTER VIVOS TRUST** | * | |
| **DATED MAY 1, 2004, et al,** | * | |
| **Defendant** | | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN OPPOSITION TO MOTION TO SUBSTITUTE FORM OF SECURITY**

Shala Constance, Trustee of the 2004 and 2005 Scruggs Family Trusts, opposes the Motion to Substitute Form of Security filed by Guy W. Olano, Jr. Olano offers the same security that this Court previously rejected[1], the only difference being that, now, four commercial sureties have refused to issue a commercial surety bond. There is no reason why this Court should accept a risk rejected by four commercial sureties. In fact, it is all the more reason why the Court should not accept that as security.

[1] Olano admits, in memorandum, that "it is unlikely that the property would actually sell for [the appraised] amount in this time of economic downturn." (DOC 106-2, p. 3).

In a previous Memorandum (Doc 93), Constance set out her reasons for objecting to the proposed deposit of a collateral mortgage note secured by a property in Bissonet Plaza Subdivision owned by Millennium I Corporation. In that memorandum, she objected to the substitution of this mortgage note because it is unclear what other debt may be owed on the property, because the property was the subject of substantial litigation[2], because zoning variances were denied for the project Millennium wanted to build on the property,[3] and because Millennium purchased the property only after it was ordered to do so by a court.[4] In addition, Constance pointed out that Millennium had been involved in suit where it was alleged that Millennium was used in an attempt to transfer the assets of a judgment debtor beyond the reach of its creditors. *London Towne Condominium Homeowner's Assoc. v. London Town Company*, 939 So. 2d 1227 (La. 10/17/06).[5]

None of the questions or concerns raised by Counsel or the Court have been met; only an

---

[2] *See Exhibit A, Millennium Group I LLC v Jefferson Parish Council*, 614-945 "G." *See also, Millennium Group I LLC v Auer Enterprises, et al*, 617-328 "I."; *Auer Enterprises LLC and Millennium Group LLC v Jefferson Parish Council,* 614-943 "D," 24th JDC, Parish of Jefferson,

[3] *Exh A, C.*

[4] *Exh B*, Judgment, 1/30/06, *Millennium Group I LLC v Auer Enterprises, et al*, 617-328 "I."

[5] In its petition, the Association "alleged that the transfer by LTC to Millennium was made for less then the amount stated in the Act of Sale or for no consideration at all, that the parties to the transfer intended for different effects to flow from the transaction than those stated in the Act of Sale or for the transaction to produce no effects between them, and that the transfer caused or increased LTC's insolvency. The Association also alleged that the purported transfer was made to place the Chartres Street property beyond the reach of LTC's creditors."

*London Towne, supra, ftn 1.*

untested statement that they cannot get a commercial surety bond has been advanced as a reason to return substandard security (rather than cash) to the registry of the Court.

Constance also objects because she has questions (which she has not yet been able to address)[6] about whether Olano or his family members and associates have more control over Millennium and the funds than may be readily apparent, and because Olano has failed to produce any evidence of the loans made by the Scruggs Family Trust to Millennium or any disposition of the funds by Millennium to third parties. There is evidence that raises questions as to whether Millennium is under the control of Olano's relatives and associates, and evidence (which may or may not be coincidental) that, shortly after the funds were released, some of these same relatives and associates were involved in the establishment of corporations apparently operating businesses in the French Quarter.

**LAW**

Before the Court could allow a substitute form of security, Olano would have to "have a reasonable explanation why he does not have all the property involved in the dispute still in his possession, must not have disposed of any of it wrongfully, and must be prepared to do anything reasonably necessary to recover all of the property and place in the court the power to deal with it." *Austin v. Texas-Ohio Gas Company*, 218 F.2d 739 (5th Cir. 1955).

Though the law requires Olano to provide an explanation as to why he does not have the funds, Olano has given only the barest of explanations as to where the funds are. He says that he,

---

[6] The parties have agreed to a deposition sequence, but, as Olano insisted on being deposed last, Constance has not been able to get answers to the questions raised in this memorandum. Nonetheless, if Olano wishes this Court to approve the security proffered by him, he could be more forthcoming with information concerning Millennium and the loans.

as Trustee, "made certain loans," but the hand notes for those loans have not been produced. He says that the loans were made to earn a "return on the proceeds," but shows only $ 5,000 on hand as of June 16, 2009 (DOC 83-3) though the pledge had been made over a year earlier, on March 10, 2008. (DOC 93-4) The same document reports that the trust had no income for the last year. Yet, if the loan was returning as little as 3%, the Trust should have received over $ 30,000 in a year's time. In his motions before this Court, Olano does not explain the purposes for which the funds were loaned to Millennium, nor, though Millennium appears to be under the control of his relatives, does he explain where Millennium might have invested or re-loaned the money. Olano has simply not been forthcoming with the Court, and the request to substitute should be denied.

## WHERE HAS THE MONEY GONE?

Olano has offered as security a mortgage on a property which Millennium purchased only after it was ordered by a Court to complete the sale. *Exh B and D.* Millennium had intended to construct a subdivision on the property, but could not obtain the zoning permits necessary for the proposed project.[7] Since the property cannot be used for what was presumably its highest and best use, its value and marketability, particularly in today's real estate market, is questionable.

As the Court will recall, the funds were issued by the Clerk on March 6 and March 12 of 2008. On March 10, 2008 (before the second check was even issued by the Clerk), Olano, as Trustee, accepted the pledge of the property from the Millennium Group in exchange for an unspecified loan amount. *Exh E.* At that point, the money trail stops. We are led to believe that Olano loaned over one million dollars to the Millennium Group, but are provided no notes or

[7] *Exh C*, *Millenium's Opposition to Defendants' Motion for Summary Judgment, Millennium Group I LLC v Auer Enterprises, et al, 617-328 "I" 24th JDC*, p. 2; *Exh D, Reply Brief in Support of Motion For Summary Judgment, Millennium v. Auer, 617-328, 24th JDC.*

other documents showing that the loans were made. Nor has Olano provided any proof as to what Millennium did with the funds, or what his connection with Millennium is or is not.

There is not sufficient evidence to know if the pledge and any loans made to Millennium were arms-length transactions. However, of the known transactions, many involve parties related to or with close ties to Olano. The pledge was made, on behalf of Millennium, by P. J. Young (Pam Olano Young), Olano's sister. *(Doc 93-3, Exh F, Millennium's Filings with Louisiana Secretary of State, p. 17)*. The pledge was notarized by Lynne Fruchtnicht, Olano's cousin, and the notary on the alleged 2007 Trust. *(Doc 93-3; Doc 1-3, p. 7)* One of the witnesses to the pledge was Ray Palazzolo, who was a witness to the alleged 2007 Trust and works at a Bourbon Street club, Temptations, of which Olano's sister, Pam Olano, is listed as President and Director in corporate filings.[8] *(Doc 93-3; Doc 1-3, p. 7)* For the Court's convenience, a chart showing the roles of the relevant individuals is attached.

Throughout its history, Millennium has been controlled by people with close ties to Olano and this suit.[9] The original articles of organization, executed December 15, 1997, made Lyn Fruchtnicht, Olano's cousin and notary to many documents connected with this case, the initial member. *Exh F, p 2.* In 2001, Jan Scruggs was added as a member. *Exh F, p 4.* In July, 2005, Olano's son, Guy W. Olano, III, was added as a member. *Exh F, p 6.* On August 15, 2007, the day before her death, Jan Scruggs purportedly signed[10] a letter to the Secretary of State changing the members of millennium, making Olano's son, Guy W. Olano, III, the new managing member,

---

[8] *Exh I, Louisiana Secretary of State, Detailed Filing for Temptations, Inc.*

[9] *Exh F, Millennium's Corporate Filings.*

[10] The signature does not resemble other exemplars of her signature.

and adding Olano's sister, Pam Olano (a/k/a P.J. Olano, P. J. Young) and long-time associate Joseph S. Ascani, Jr. as members of the LLC.[11] *Exh F, p 9.* The present beneficial owners of Millennium are not known, but a 2003 Florida District Court decision identifies Jan Scruggs as "Millennium's sole stockholder." [12]

On February 14, 2006, when the Bissonet Plaza property was purchased by Millennium and Millennium executed the collateral mortgage and collateral mortgage note, Jan Scruggs signed for Millennium, and Lynne Fructnicht was the notary. (DOC 93-3) The pledge of the collateral mortgage note on March 10, 2008, was signed by Olano's sister, P.J. Olano, for Millennium, and Olano himself for the Scruggs Family Trust. (DOC 93-3)

In light of the above, it is unclear as to who the beneficial owners of Millennium are, but they appear to be Olano's relatives. Thus, Olano should be in a position to tell this court what Millennium did with the money he gave it in exchange for the pledge. The Court should be entitled to know the full scope of the transactions in question if the Court is even to consider a request based on alleged hardship. The notes for those loans, presumably held by Millennium, are another potential source of information which Olano has not offered. In fact, on May 28, 2008, just a couple of months after the funds were disbursed, Guy W. Olano, III, and Pam Olano opened corporations named Fiorella's on Decatur, Inc.*(Exh G)* and Buccaneer's Landing, Inc. *(Exh H)* Those corporations apparently operate establishments at 1136 Decatur Street and 45

---

[11] The descriptive list in the Succession of Jeannette Scruggs does not list either her interest in Millennium or any cash or bank accounts where the proceeds of any transfer of her interest in Millennium might be found.

[12] *Millennium Group I v. Attorney's Title Insurance Fund*, 847 So.2d 1115 (FL App. 1st Dist. 6/19/03).(Millennium filed suit over sale of a bar, defendant counter claimed that Millennium had not paid a note, and Millennium answered counter claim with defense of fraud.)

French Market Place in the French Quarter. Joseph Ascani, Jr., who serves as registered agent for Buccaneer's Landing, was also the real estate agent in connection with the Bissonet Plaza sale, and is apparently Olano's former brother-in-law. *Exh C, p 1, Exh K.*

## CONCLUSION

Olano is asking this court to accept as security the same property which this Court previously rejected. A number of commercial sureties have refused to accept this risk, and there is no reason this Court should do so. As seen by the above, Olano should explain who has control over the funds that were in the registry of the court or have documents (hand notes and loan documents) showing where that money has gone. The interest paid or payable under those notes could provide additional security in this matter. If this Court is contemplating accepting any security (as opposed to cash) from Olano, it should order Olano to provide information concerning the loans to Millennium, the interest from those loans, and the uses to which the money was put by Millennium or subsequent recipients of the funds removed from the registry of this Court as a result of misrepresentations.

**Respectfully submitted,**

***s/J. Keith Hardie, Jr.***

**J. Keith Hardie, Jr., Bar Roll No. 17586**
**757 St. Charles Ave., Suite 304**
**New Orleans, LA 70130**
**(504) 522-6222**

**Steve C. Thompson, LSBA No. 14469, T.A.**
**S. Layne Lee, LSBA No. 17689**
**Moore, Thompson, Lee & Broyles, APLC**
**6513 Perkins Road**
**Baton Rouge, LA 70808**
**(225) 766-1100**

**ATTORNEYS FOR SHALA MARIE CONSTANCE, TRUSTEE OF THE 2004 AND 2005 SCRUGGS FAMILY TRUSTS**

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2009 the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all counsel receiving notice of electronic filing, including Covert J. Geary and Emily E. Eagan, Daniel Webb, Scott T. Winstead, James H. Gibson, and Dane S. Ciolino. A copy was sent by U.S. Mail to Sherry Scruggs.

s/J. Keith Hardie, Jr.
J. Keith Hardie, Jr. (LSBA #17586)